Good morning, Your Honors. Good morning. Tom O'Leary, Dan Gregory, we're happy to be here, and thank you for the invite. I'd like to get to points that I think the Court is interested in. Could you move that microphone just a little closer so we can see you? Can you hear that? Yes, much better. Okay. I wanted to get to points that I think the Court is interested in, and in light of the Baca case, which we cited on supplement, I think that's fairly important. First, I'd like to talk to deliberate indifference, reckless indifference. There is no area of our briefs, and I'm talking now about counsel for the state as well as our briefs for Mr. Allen Stein, that finds sharper disagreement than when we interpret the Arizona State v. Peek case out of the Supreme Court. That was a 5-0 decision. What we've contended very simply is that the state is attempting to use Peek as an exoneration vehicle in a civil case, and we're saying that's impermissible. What you have to do is get behind Peek.  What the state was trying to do in Peek, we're saying, was get around the law. Peek was a case where the state realized that the law set by the legislature was different than that which they liked, and they went behind the law and effectively argued, and this goes to reckless intentional behavior, carried on before the Supreme Court to get a different interpretation. Then the Supreme Court ultimately decided against them, and they basically said this. They said, legislature, you didn't know what you were doing. You didn't intend what you were doing. The Supreme Court rejected that argument completely. It said the legislature intended its behavior. We have to presume that. And what's furthermore, if the legislature wants to change its legislation, they know how to do that. Now, Peek represented a colossal debacle for the State of Arizona, so now what they do, suit civilly, is to come in and basically say something entirely opposite to what Peek says. The law wasn't settled. Peek says the law was so settled it was clear and unambiguous. I wanted to mention that because that has to do with that standard of indifference, reckless indifference. The second thing I would mention, Your Honors, I'd like to talk just a bit about BACA. BACA raised what it called a perplexing area when it came to notice pleadings, and I'll give you what our reaction was when we read BACA. We read it for the first time, and we said, oh, my goodness. What we see in BACA is the same thing we did, which is a council very carefully setting forth 1910 New York pleadings to get around the legal terrain that we knew existed. The confusion, the perplexing perplexity that this Court, Ninth Circuit, came down with when it treated BACA. If you look at BACA, we can live with BACA standards. First of all, BACA made a sharp differentiation between the terrorist cases where public officials are being protected. It made a sharp distinction between antitrust litigation, complex civil litigation, and claims that are brought for 1983. And it went back to a more reasonable standard, and it asked two questions, and two questions only. Does this complaint place the defendants that are sued under fair notice so they can defend themselves, and is it plausible? We mentioned in our memorandum plausibility seems assured because, after all, our man was released. And he was released on the specific indication by the State Attorney General's office that there was no authority to hold him. There was no legality, if you will, in the sentence. BACA, however, in its first part says very clearly that you need to apprise the defendants who are being sued why it is that they're being sued. Now, we didn't plead that complaint and talk about what the directors had had for breakfast in the morning, but I'm suggesting to you it's the most exhaustive complaint you're going to find that sets forth all the things needed to defend themselves. They knew the statutes, the all-important statute of responsibility to hold people under law or subject to law. That's a qualification the State has not spoken to at all. That's a direct responsibility of the director of the Department of Corrections. Another thing that comes down is there's a floating standard, I am suggesting, that when we deal with deprivation of liberty, if you look at the Younger case, this is a Ninth Circuit case also, if you look at the Younger case, what you find is we look at the potential harm to an individual if his rights aren't protected, if there are not statutes, regulations, et cetera, in place. If that is not in place, we look at the harm and we say there ought to have been statutes, regulations in place, a heightened standard. We're talking three years. During those same three years, during those years from 206 to 209, the State was essentially litigating for the right to go beyond the law, to get away from matching, which is quintessential. Matching amounts to a deprivation of due process if you don't do it right. Matching simply put, what's the commission of the crime, what's that date, and what's the statute in force on that date. State did not follow that existing law. When you say the State, are you referring to the Department of Corrections, are you referring to the Attorney General's Department, or what? When I refer to the State, I'm just — You haven't sued the whole State. I accept that. I'm referring to the State's responsibility under the Schwichtenberg case, also specified to be a unanimous decision now by the Supreme Court, that said this task, the sentence calculation task, is best left to the Department of Corrections. They are the ones that have to get it right. And so what I'm saying is the State is arguing that fabric, that contour of the law, according to the Alexander case. That contour of the law has to be known by the Department of Corrections and its officials. They have to be following that law to do their job correctly. And if you look at even the Ducknick case about taking responsibility for the inmates entrusted to them, Ducknick is consistent with Schwichtenberg. Schwichtenberg is consistent with 31, 231.01. It all comes together. And Schwichtenberg, if there's any doubt, this is before 2006, Schwichtenberg comes in and it says you have to do it. You're the ones. Who's you? You, Department of Corrections. So you only sued employees of the Department of Corrections, correct? We've sued the director of the Department of Corrections, particularly under his duties. Okay. I'm just trying to find out. Okay. All of the defendants are in the Department of Corrections? Yes. The State of Arizona is a defendant. We've sued them. The other people are under the time comp unit that we know about who were in charge of the time comp unit, whose job it is to calculate. In what department? Pardon? In the Department of Corrections? Yes, the Arizona Department of Corrections. So what your argument is that the Department of Corrections is responsible for looking at the judgment of the court that puts your client into jail, and they can't just accept that on the face. They have to go beyond it and see whether or not the court was right or wrong. No, I didn't say that. I said they have to look at the existing law. And Pete tells us precisely what the existing law was. It was Newton. I understand. I've heard your argument. Go ahead. Suppose they have this duty to do this. Yes. So they can't rely upon the court on what the court has done, nor can they rely on the Attorney General, who is the usual person in a state who is responsible. These are people in the jail, and they can't rely on the face of a valid order from the court. They must look behind it and do their own investigation. That's your argument. Right? I'm not saying look behind, but the Harris case answers your question. Well, let me keep reciting the case, but I'm trying to say where they apply. What, in the end result, what would you have the Department of Corrections do? Well, I'm loathe to accept your premise, Your Honor. Please, respectfully. Yeah. Well, let's say, for example, that there's a mandatory maximum. I'm not a mandatory. There's a maximum sentence, and a defendant is sentenced beyond the maximum, and the order says you're sentenced to 10 years and maybe the maximum for that crime.     I'm not a mandatory. I'm not a mandatory.     and the maximum is 10 years and maybe the maximum is five. What authority do they have to say, no, we're going to let you out after five years, absent a judicial order? And that's the problem with this case is that there's something obviously very wrong here. Law. They have to come forward is what I'm saying. I understand with perhaps the more desirable circumstances. But under the laws of the state of Arizona, do they have the authority to let somebody out in violation of a court order? Do they have authority to lock someone down? No, no, no. To release someone. I'm not hearing that. I'm sorry. I have hearing aids and I don't want to pick that up. Yeah, does the Department of Corrections have the authority to release someone despite the fact that a court has ordered them to stay in prison? I'm suggesting that the Department of Corrections has the implied authority to communicate that we do not have authority to hold this person subject to law and therefore he should be released. And if you talk to the Harris case, that's exactly what they're saying. In Harris, they're saying the judge has a responsibility, the Department of Corrections has a responsibility to customize, I think they use the term individualize the sentence. There was one other area I want to go ahead. Let me follow up with that. Okay. If it's implied authority, then under 1983 law, why doesn't qualified immunity protect the individuals because it's not clearly established? We argued why qualified authority does not come into play. And qualified authority does not come into play because their acts really are ministerial under the statutes that they operate under. But they're not, we're not asking them to make decisions. We're asking them to enforce the law. They have to, they have to get. I think we get back to what Judge Wallace was asking you, is that you're suggesting that they have the authority to tell a court that its order is illegal. I am suggesting they have to communicate to their counsel, if you will, the Attorney General, that they do not hold this individual under law. They do not have the authority to keep holding someone when they receive the notice. When they're fairly apprised that they have no basis. When who receives the notice? When who receives the notice? What is that? When who receives the notice? Number one, as we pointed out, there's an intake procedure. So it's at that point that the time calculation unit does its work. After that, there has to be yearly opportunities for the time calculation unit to do the same thing. All with the idea of correctly identifying what the correct discharge date of the individual happens to be. That's the authority. That's why we're here. They did not follow that authority. They didn't give the hearing. They kept holding the individual, kept litigating for the right to hold the individual, the State did, and they had to be kept advised of the. Let me ask you, suppose that we rule that the Department of Corrections does not have the duty to review the legality of the sentencing court's order. How can you succeed in determining deliberate indifference under the Eighth Amendment? All the things that were listed on page 20 of our brief, we listed those things one by one. And today I tried to expand a little bit on the piece. And what I'm saying is, Your Honors, that they at least had knowledge of the contours of the law. And that's what Alexander Perel talks about, the contours of the law, where they placed on reasonable notice. And what did they do with the reasonable notice? Kept holding the individual. There's another thing which I've mentioned. This is a motion to dismiss. We haven't had the opportunity for discovery. If you read the complaint, you saw we were very detailed in terms of what time comp unit directives were, the internal regs. And those, I think according to the whole case, internal directives can be used as a basis to find a constitutional violation. So if you look at those directives, they tell, tell the individuals. And if the supervision is bad and they're not getting the message, it again goes back to the director. If those individuals are not following their own directives, that can itself afford a constitutional violation. And you're talking about the Department of Corrections. Again, I'm talking about the Department of Corrections. I'm talking about the directors. I'm talking about the folks in the time comp unit, individuals. And I'm talking about all of them without getting the opportunity for any discovery. I understand. Our questions have taken you over your time, but we'll give you some time for rebuttal. It's an important case. So thank you, counsel. I really appreciate being here. Yeah. May it please the Court. My name is Daniel P. Schack. I'm an assistant attorney general in the State of Arizona. And I'm here on the behalf of the defendants' appellees. And would you raise your mic up just a little bit for us? There you go. Thank you. Sure. The point, and I believe the judge's questioning has already indicated this. The problem here that put Mr. Stein in prison was not a sentence calculation error. It was a sentence error. The judge made an error, as was demonstrated years later when the Arizona Supreme Court issued the Peek decision. But that is a legal decision. So after Peek was decided, whose responsibility was it to make sure that the Peek law was applied to people who were in prison? In other words, maybe you have an argument that the state didn't know what was going on prior to Peek, but after Peek you knew that that potentially was going to affect some inmates. So whose responsibility was it to make sure that people were not incarcerated illegally? In this case, Your Honor, Mr. Stein had already filed his own petition for post-conviction relief. So that is not an issue regarding him. He had been litigating the case as his case went along. Peek was going along. But there was quite an interval between Peek and the time Mr. Stein was released. Yes, there was. So why did the state come in on the Rule 32 and say, we concede? Or did it continue to fight it? To answer that question, I have to go outside the record. I have looked at the Superior Court. I'm just talking about the pleadings. I mean, we can take judicial notice of the pleadings. Yes, they are in the pleadings in the Maricopa County Superior Court. And what happened was that the county attorney's office requested additional time to respond to Mr. Peek's petition. Specifically to address whether or not Peek was to be applied retroactively to other inmates. If you read Peek, you will notice that the court pointed out that even Mr. Peek's petition was untimely, filed, I believe, three years after his sentencing. Mr. Stein's petition was two years, was filed two years after his sentencing. So there was a discussion of whether or not the Peek decision was to be applied to inmates whose convictions had become final. In the end, the Attorney General came in and pointed out that it had filed a motion for reconsideration in Peek, in the Arizona Supreme Court, asking for guidance on what to do with that. And after that motion was put aside, the Attorney General came into the Superior Court in Arizona and filed a notice saying that, yes, we concede now that Peek requires Mr. Stein's release. So the Attorney General had the authority, at least within your system, to say, Peek applies. You ought to let these inmates out. Is that what your position is? No, Your Honor. Who had the authority? That's still a judicial determination. What happened was the regular ---- True, but I mean, I understand that. But once Peek was decided, the county attorney and the Attorney General could have come in to Mr. Stein's case and said, we concede he should be let out today. True? You could have ---- the Attorney General could have decided that. The Attorney General could have in Peek's case because there was a judicial proceeding going along. It is ---- Well, this is the only case we have here. Correct. But as you were asking ---- I'm not asking for the consequences, Your Honor. I'm just saying that the State could have done that. The State could have done that in Mr. Stein's case, certainly. In the course of a judicial proceeding, what we have here and had in Mr. Peek's case was a judicial order informing ---- ordering the Department of Corrections to hold this man in prison. And it is not the province of the Department of Corrections, the director or the time comp supervisor, to tell the judge, no, I think your order is wrong and I'm going to let this person out. The time and place to determine the legality of a sentence is in the courthouse before the judge. Let me ask you this question. It's a little collateral, but it helps me to understand the context. Are there other inmates being held in Arizona that are similarly situated to Mr. Stein who haven't filed a cause of action and the State has not investigated whether they should be in prison or not? I am not aware one way or the other of that, Your Honor. The State has not undertaken that examination? I am not aware whether the State has undertaken that, Your Honor. So the point is ---- The point is that the separation of powers is crafted from a concept of separation of powers, correct? That is one of the bases for it, yes, Your Honor. Your opposite attorney is arguing, as I see it, that the separation of powers doesn't apply, that the executive under the Department of Corrections has the responsibility to look at any order that comes through and determine whether or not it's a valid order, which is usually in the judicial room, area. Are there cases in Arizona that can help us determine the extent of the separation of powers doctrine as it would apply to this case? Your Honor, the separation of powers doctrine has not been applied in Arizona in circumstances similar to this in any case of which I am aware. The power of the Department of Corrections and its people in a case like this to look at the sentencing order is to determine how long the inmate should remain in prison. And so the separation of powers doctrine is a sentence calculation, a sentence calculation concept matching up, if you will, with the sentence that the judge has imposed. The judge has told the Department of Corrections what the law is in this case. You've told me what I know about the case. What you haven't told me is whether or not you have any case or doctrine or otherwise that indicates that counsel is incorrect in his stretching of the separation of powers doctrine to require the Department of Corrections to also do what we usually think of as a judicial act of determining the law when the person is incarcerated rather than just doing a mathematical calculation. Again, not specifically in that situation. However, as the case that we've cited in our brief points out, Arizona has perhaps the strongest concept of separation of powers in the entire nation. We have an article specifically, Article 3 of the Arizona Constitution, specifically lays out that the powers of the executive are reserved to the executive, et cetera, et cetera. It is more overt than in the federal constitution or in any of the other state constitutions. And if you follow that along and you recognize that determining what the law is, is a judicial function, which we have known since Marbury versus Madison, then it follows one after the other that the Department of Corrections, an executive function, does not, is not allowed to usurp the judiciary function, which is to determine what the law is. There are circumstances, though, and it's not particularly this case in which the Department of Corrections is vested with the authority to calculate the sentence. For example, good time credits would be an example, correct? That is exactly correct, sir. And that is exactly the point, the distinction between this case and cases such as Haygood or Alexander. That is, and that's exactly why there is a time computation unit that must match up the time of conviction, the date of conviction with the conviction before it, because the legislature has changed over the years. The calculation of good time credits, for instance, the implication of whether or not good time credits can be applied, there are certain statutes in Arizona that say that for certain crimes you can't get good time credits. And those change over the years. So the matching that time computation does is to determine which of those applications apply to the inmate and to use that information to compute his sentence. There's nothing in Arizona law, statutory or case law, that says that they do this to look behind the judge's decision. Yes, but let me follow up on that with just one additional question, which is if the time computation unit discovers what they believe to be an error in a judicial judgment, what are they supposed to do, either under law or regulations, in your estimation? Well, the current law, Arizona law and federal law, do not require them to do what they... No, I'm actually speaking more specifically. Is there something in Arizona regulations or procedure that would direct the time computation unit about what action it ought to take if something crosses its desk and they said, I think the district court or the superior court calculated this incorrectly. What do they do? I am not aware of anything in the regulations of the law of Arizona that require them to do anything. Let me ask the harder question then. Suppose the order says the defendant is going to be incarcerated for 50 years, 50 years. The statute everybody knows is a five-year statute. Right away, a person would know there must have been a typo. Your argument is they have absolutely no responsibility to call that to the attention of anybody. Just put him in for 50 years because the judge said 50, right? Well, Your Honor, yes, indeed. They would not have a legal responsibility. They would not have a responsibility in tort or constitutional law to bring that to anyone's attention. Even though everybody in the world knows it's not 50, they still don't have to tell anybody. The judge has told them that it's 50, Your Honor. Right. But they know that. Go ahead, Judge. But doesn't it make some sense, a matter of fact, a whole lot of sense, that somebody in the corrections department has the obligation to advise someone in the judiciary of the obvious error, to advise them, not to rule? Excuse me, Your Honor. It is a laudable thing, and I am led to believe, I have heard secondhand, that indeed people at time computation do contact judges in order to clarify questions like that. But in a case such as this, where the error lies, if you repeat and you see how the Supreme Court decided that the lifetime probation wasn't available here, it requires a fairly or quite sophisticated legal analysis to reach that conclusion. Probably so. Let me ask you then a follow-up question to that, which is, this is dismissed on a 12b-6. There's been no discovery, so we don't know what the time computation unit does except for representations and what we know from the regulations. Why not allow some discovery to determine precisely what the time computation unit does or does not do? The regulations are fully available to the plaintiffs online and in printed books. There's nothing necessary to discover. And at least as far as the federal courts are concerned, contrary to what counsel said earlier, we have cited a case from this court pointing out that internal regulations do not raise constitutional rights. What the time people are told to do in calculating these sentences, and that's what they're doing is calculating sentences, does not give rise to a federal right cognizable in court. So the answer to the question is they have everything. In the context of good time credits, that would not be true, right? In the context of good time credits, for example, that might not be true. That's correct if it gives rise to a legitimate expectation in release, but that has to be done, of course, in conjunction with the statutes. There's nothing to be gained from discovery here, Your Honor. Everything that they need is available to them. Any further questions? Okay. Thank you. Thank you, Your Honors. We'll give you two minutes to rebuttal. Your Honor's question that was posed, what if it was 50 years? You have to move your microphone. What if it was 50 years? We reach a point, I'm submitting, in a civilized society. I've seen a five-year case. I've seen a three-year case, a two-month case. This is three years. We reach a point in a civilized society where those answers are not sufficient. There has to be a constitutional duty to come forth with information and say we are not holding this individual under law. Is that the authority, or are they simply obligated to advise the judiciary? If that's true, then that means they're fighting for the right to hold people under illegal sentences. Not fighting for the right. They're simply asking the proper authority to make the determination. I believe they had to come forward and do that. If they come forward, that's another thing. I believe they did. And on the basis, if you look at the Tobin case, they said, well, they had the valid orders. In fact, they had orders that specifically, on their face, when subjected to the matching requirements, indicated to them, should have indicated to them, should have given the contour of the law to them, that they could not hold this individual. There was never a period of time, never, I repeat this, because Your Honor talked about the inception of PEEQ. Well, shouldn't PEEQ have alerted them, et cetera? There was never a point in time, not once, where there was any law to support this individual being in prison. His probation had expired. That was clear if you did matching. But the real question for us is who has the duty in terms of federal constitutional law. And it's a stretch to say that the Department of Corrections has the authority to let someone out of prison absent a judicial order under these circumstances. That's the problem from a federal constitutional point of view. And if you're in state court arguing negligence against the state, that would be one thing. But, for example, the flip side is if the Department of Corrections has the authority to release anybody on their own estimation what the law is, then there's no control over that. They can let people out. I think they're a good guy. I mean, if we follow your argument to its logical conclusion. That's the difficulty. They, in fact, release on credits and things like that, good behavior credits. Sure. And calculations. Sure. So they are acting within their ambit of authority of holding people under law. I just want to go back to a couple of questions.    And I'm going to go back to the other. If the Department of- this case, I wish I had Robin Hood as a client. I wish the charge was robbing from the rich and giving to the poor. That isn't it. It would be a lot easier, I think, to persuade. Certainly, I'm going to perhaps have to go- Maybe a jury, maybe not an appeal. What the state is arguing, Your Honor, and we can't miss the ball here, it doesn't matter what the offense is. They're trying to carve out a different responsibility than exists under law. And that's why these people, these GAP people under this statute, charged with attempt child molest, that's why they're being held, that's why they were not being released. But if you apply a different set of laws than Pete came up with and said, these are clear, these are unambiguous. If you come up with a different set of law, it's not just child victims you're talking about or molestation cases or attempted molestation. Is there anything in the record that supports the particular crime? Yes. Go ahead. I'm just saying that if you happen to see our first briefs that were on the motion to dismiss, the State kept talking about child molestation, crime against children, et cetera, et cetera. And I'm saying- Right. But that's not where we're here. We're not relitigating the earlier conviction. That has nothing to do with this case at all. Thank you. Now, counsel, our questions have taken you over your time. Any further questions from the panel? No. Thank you both for your arguments. It's an interesting and important case. And we will take a 10-minute recess.
judges: George, Wallace, Thomas